Withers, J.
delivered the opinion of the Court.
The first ground of appeal, imputing error to the Commissioner of Special Bail in allowing the plaintiffs to challenge peremptorily one of the jury, has not been pressed or argued before this Court, and hence it is not regarded in making up our judgment.
Nor is the matter of the second ground of appeal considered substantial, for the object in adducing the Sheriff’s writ book was collateral, to wit — either to show the number who had sued the defendant, or the time when two writs were lodged. This does not appear to have been any how material, for if the disclosures of the book had been excluded, it is not perceived how the result could have been affected.
The third ground complains that the jury rendered two separate verdicts in one matter or trial.
How could they have done otherwise? Two separate sug-. gestions were filed, and the defendant made an issue on each. *136 If the matters presented were capable of consolidation, still no motion was made to that effect. However, it is not supposed that there is any thing irregular in different creditors filing separate suggestions, if they are willing to encounter the inconvenience of such course in a protracted trial. Represented by divers counsel, even co-operation may not be practicable, much less can we undertake to say that totally distinct cases of creditors wholly unknown to each other, (it may be) and possibly presenting different issues, sustainable by different testimony, shall be fused, as it were, into each other. Perhaps this Court might be astute to devise or discover some mode of counteracting the mere purpose to har-rass a debtor, when so unworthy an end might betray itself —but we see nothing in the present case except the very common occurrence of two suggestions against the same debtor, met by him with the plea of the general issue, presenting in the main the same points, submitted to and determined-by the same jury.
The real questions in the case may be presented thus:
1st. Are the specifications of the suggestions filed and found against the defendant, or any of them, sufficiently precise in terms, and material in substance?
2d. Must the act of the defendant, in fraudulently selling, conveying, or assigning his estate to defraud his creditors, as well as “ undue preference,” have been perpetrated within the three months contemplated by the law, in order to work the defeat of the defendant’s application ?
3d. Can this term of three months, within which an undue preference is denounced, be taken to have reference to the period of a party’s arrest on mesne process, where he is enlarged on bail, though more than three months have elapsed between that event and the time when the party is subjected to actual confinement or the prison rules 1
1st. As to the form and substance of accusation in the suggestions.
Undoubtedly this species of proceeding should be brought within the main scope of the leading purposes of all pleading, though it need not be affirmed that all the strict and precise rules of the science are properly applicable. It will, however, readity occur, that if form or substance be wanting, there are the means, common to all practice, of attacking such defects, to wit, demurrer; and such was a view of the like question, suggested in Sherman & DeBruhl v. Barrett, 1 McMullan, 147. It would not seem unfair that while the defendant would hold creditors to that strictness dictated by the common law in proceedings known to it, he should, *137 in return, be required to use the weapons also equally well known. But besides this, such proceedings as that now in question are so much under the control of the officer presiding, at every step of-the progress, by way of motion and order, that all matters pertaining to the pleadings may be, and ought to be, properly adjusted before the trial takes place. Still it is not intended to be broadly affirmed, that we shall cut off, under all circumstances, a motion in arrest of judgment, or for a new trial, on account of the want of substance in the allegations.
It is insisted, in the fifth ground of appeal, that time, place, suffi, person, item, and other facts, should have been specified. It ought to be observed, in general, that as the rules of law do not require of a party to assume the burthen of proving that which is peculiarly within the knowledge of his adversary, so no rule of practice ought to be allowed to work a similar hardship. Judges, as well as others, are presumed to know that fraud is accustomed to lurk under guises — -its badges are not designedly carried upon the front. That precision of definition and description which is wisely required in setting forth a cause of action in an ordinary case, must be somewhat relaxed in cases such as that under examination, having proper reference to the subject matter and the position of the parties. We do not, however, perceive how any of the particulars above mentioned, not set forth by the plaintiffs, became matters of contest or importance; or how the defendant was, in any respect, surprised by a course of testimony not indicated by the issues tendered in the pleadings. We cannot discover ground for just exception to the form or precision of such of the specifications as were found against the defendant, except the 9th of those filed by Mr. Bauskett, which obviously embraced nothing that was within the province of the jury, but that only which should enter into the order or judgment arising from their finding.
The more material branch of the first enquiry is, whether .the issues resolved by the jury were immaterial or unsubstantial, and this will also involve the second proposition above stated. We do not attach any importance to the idea that the finding of the jury in favor of the defendant, on sundry of the specifications, neutralized their verdict against him on others. This amounted to no more than selecting the language of those propositions which the jury considered to have been proved, and was equivalent to adopting that language as a part of their verdict. Incorporating then, this matter, what have they found ? Why thus, upon the first suggestion, (that filed by Mr. Bauskett,)' excluding the 9th proposi *138 tion: “We find that F. A. Schroder purchased goods of S. Mowry & Son, for.which the debts sued upon in this case were created, with the view and intention.to assign them over to his brother, (S. C. Schroder) and thereby cheat and defraud Mowry & Son out of the means of obtaining payment of their said debts: that defendant, on or about the 7th January, 1847, made a fraudulent assignment of his stock of goods in Hamburg to his said brother, with a view to hinder and defraud Mowry & Son, his said creditors, as also his other creditors) of their just debts: and that if said assignment was even for a valuable consideration, it was an undue preference of one of his creditors to the prejudice of the plaintiffs.”
In the second case, (that in which Mr. Griffin filed the suggestions for C. M. Gray and sundry other creditors,) the jury found substantially thus:
“We find that F. A. Schroder is guilty of fraud in buying the goods, wares and merchandize for which the notes sued upon in these cases were given, with a view of assigning the said goods, &c. to S. C. Schroder, his brother, who was conspiring and confederating with him thus to cheat and defraud the plaintiffs and his other creditors: that he was guilty of fraud in having assigned to his said brother a house and lot in the town of Hamburg, and his stock of goods in the said grocery store at the date of said assignment, and his household and kitchen furniture, with a view of defrauding the plaintiffs and his other creditors: that he has been guilty of fraud and of making a false return in not including in his schedule his interest in the proceeds of the sale of his stock of goods, &c. in his grocery store at the date of said assignment, which sales have been made since that time: and because he did not include his interest in moneys collected since that time on notes and so forth, due to him at that time: and because he has not included in his schedule all his notes, bonds, accounts, and evidence of debts due to him: and that he has been guilty of fraud in giving an undue preference to others of his creditors, to the prejudice of the plaintiffs, to wit, in assigning or attempting to assign, his house and lot, and his stock of goods in his grocery store in Hamburg.”
Excluding,'for the present, from enquiry the latter clause of each verdict, as above stated, to wit, those relating to undue preference, do these findings bring the defendant within any of the definitions of guilt contained in the law ? What are they ? (See A. A. 1788, 2 Brevard’s Dig. 160, sec. 7, and read in connection with it the Act of 1833, 6 Stat. 491, sec. 1.) *139 They are — first, fraud; second, undue preference; third, false return; fourth, going beyond the Prison Rules.
We have not.a doubt that the fraud here contemplated is such precisely as the law, in general, inhibits — that it is not a peculiar species, for the first time defined in the Insolvent Debtors and Prison Bounds Acts, and taking a distinguishing hue from them alone. Nor have we a doubt that the fraud intended is well found in that portion of both verdicts which affirms that the goods assigned were bought primarily for the purpose of being assigned to defendant’s brother, and thus to cheat and defraud the plaintiffs; and that the same is well found in that portion of the verdict which affirms that the assignment to his brother of his house and lot, furniture, goods, <fcc. was fraudulent, and made with a view to defraud his creditors.
What could be a clearer fraud, according to any respectable code of morals, in fact or in law, than to procure goods from one with a concerted design to smuggle them into the hands of a brother who was conspiring and confederating to effect that object? This has been found upon the 7th specification of the suggestion filed by Mr. Griffin — and we are at a loss for any reasoning or illustration more clear than the proposition itself — that this must be a fraud upon the creditors thus swindled out of their property.
That the assignment of these goods, though made more than three months prior to the actual confinement of the defendant, was an act which, when found (as it has been) fraudulent by the jury, is prohibited or condemned by the statute, we well believe. The words are, (7 sec. A. A. 1788,) “who shall have, within three months before his or her confinement, or at any time since, paid or assigned his estate, or any part thereof, to one creditor in preference to another, or fraudulently sold, conveyed or assigned his estate, to defraud his creditors.” The limitation of time does not apply to the last branch of the foregoing quotation, touching a sale, conveyance or assignment of the debtor’s estate. Nor is this a novel or unfamiliar construction. The doctrine was ruled in Sherman & DeBruhl v. Barrett, before cited, where the question was made. It is enough to add that the same has been not unfrequently ruled. In one instance it was held that where one had removed his property beyond the limits of the State, in order fraudulently to deprive his creditors of the benefit of the same, he was excluded from the privileges of the Act, though the property was included in his schedule. That the undue preference, which it is conceded must be within the prescribed period, and a fraudulent sale, conveyance or *140 assignment, are wholly separate and distinct, may-be clearly perceived in the Act of 1833, under which the proceeding in the present case has taken place. It is reasonable to hold that undue preference is one thing, and a fraudulent disposition of property another — the first may well be confined to the prescribed period, as it is to occur by a sale or payment to a creditor, and this might very easily happen in the current transactions of one who was embarrassed, with no purpose to do wrong, or knowledge that wrong was done — and hence should have a limit. The other needs no such protection ; it cannot happen by mistake or from ignorance; it is as full of iniquity if perpetrated within twelve as within three months before the specified period, and is the very thing that is likely to be done far in advance of the approaching crisis, and is contemplated 1 y the Act as a transaction that will be attempted and effected with any third person, whether creditor or not. It is vain to attempt to enumerate the great variety of form in which this latter purpose may be attempted and detected. It has been determined tha.t a general assignment, in favor of all creditors, though giving preference among them, is not the fraudulent assignment denounced by the law: but such is not this case — it is very different, and may afford a good illustration of what is contemplated.
To all this we may add, that a part of the finding develops a false return, a distinct and specific offence; and the particulars are stated in which it is false. If there were nothing else, it is not perceived how the defendant can escape the effect of this portion of the verdict.
We cannot hesitate in holding, therefore, that the issues are material — that is, such as the law has in view; that they are resolved against the defendant, and that there was abundant evidence to justify the result.
3d. Upon the third- proposition announced in the outset, we do not feel disposed, upon the present occasion, to pronounce a judgment. The word “confinement” is used in the Act of 1788, and also in that of 1833; and in the cursory consideration given to the argument on that point, it appears to some of the Court not to be without plausibility. On the other hand it has occurred to us that if the term of three months shall never be applied to the period of a party’s arrest, merely because he gives bail, it may happen that a creditor, becoming such bail, may procure a sale or assignment from his debtor, and waiting for more than three months, actual “confinement” may then be made to commence, and the question of undue influence at any foregoing period will be thus wholly evaded. The question is not necessarily in *141 volved in the conclusion to which we are conducted by other satisfactory views in the present case, and it is therefore not intended to determine it. The motion is refused.
Richardson, J. O’Neall, J. Evans, J. Wardlaw, J. and Frost, J. concurred.

Motion refused.